# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# LAFAYETTE-OPELOUSAS DIVISION

| | | |
|---|---|---|
| ROSE CARTER | * | CIVIL ACTION NO. 05-2516 |
| VERSUS | * | JUDGE HAIK |
| COMMISSIONER OF SOCIAL SECURITY | * | MAGISTRATE JUDGE HILL |

## REPORT AND RECOMMENDATION

This social security appeal was referred to me for review, Report and Recommendation pursuant to this Court's Standing Order of July 8, 1993. Rose Carter, born June 27, 1943, filed applications for disability insurance benefits and supplemental security income on March 17, 2003, alleging disability since May 15, 2002, due to major depression, anemia, diabetes mellitus, and high blood pressure.[1]

## FINDINGS AND CONCLUSIONS

After a review of the entire administrative record and the briefs filed by the parties, and pursuant to 42 U.S.C. § 405(g), I find that there is not substantial evidence in the record to support the Commissioner's finding that the claimant was not disabled and that this case should be remanded for further proceedings.

---

[1] Claimant filed a previous application for benefits, which was denied in October, 1995.

In fulfillment of F.R.Civ.P. 52, I find that this case should be remanded for further proceedings, based on the following:

**(1) Records from University Medical Center ("UMC") dated March 1, 2002 to March 17, 2003**. On March 1, 2002, claimant complained of low back pain and multiple areas of paresthesias over the legs. (Tr. 157). The assessment was arthritic pain, for which she was prescribed Celebrex. (Tr. 157-58).

Claimant was seen on March 19, 2002, for followup of diabetes mellitus and hypertension. (Tr. 155). She complained of pain in her low back, thighs and arms, and a sore right toe. Her blood pressure was 129/64, and her weight was 253 ½ pounds. The assessment was hypertension, well controlled. On July 9, 2002, her hypertension was under good control, but her diabetes was under poor control. (Tr. 152).

A double contrast upper GI exam and KUB dated August 23, 2002, revealed a small sliding hiatal hernia with gastroesophageal reflux. (Tr. 147). The small bowel series was normal.

Claimant was seen on December 19, 2002, after having a delirious episode. (Tr. 134). Her blood pressure was 207/83. On examination, she had +1 pedal edema bilaterally. Her abdomen was obese. Neurologically, she had no focal neurological deficits. The assessment was hypoglycemia, resolved, and anemia.

On February 8, 2003, claimant complained of shooting pain down the legs. (Tr. 129). On examination, she had 2+ pedal edema. Straight leg raising was negative. The assessment was peripheral neuropathy.

On March 24, 2003, claimant complained of her bad nerves. (Tr. 125). She had been seen by mental health and had mild relief on medications. The assessment was anxiety.

**(2) Records from Acadiana Mental Health Center dated January 28, 1997 to April 10, 2003**. On January 28, 1997, claimant was admitted with recurrent major depression. (Tr. 209-13). Her Global Assessment of Functioning ("GAF") score was 60. (Tr. 212). She was treated with individual and group therapy. (Tr. 189, 194-198, 207). She was stable on medications. (Tr. 194).

On February 27, 2003, claimant reported episodes of disorientation and severe depression. (Tr. 182). Her diagnosis was major depressive disorder, recurrent, and dysthymic disorder. (Tr. 206). She was treated with medications. (Tr. 204).

**(3) Consultative Evaluation by Dr. Nathaniel Winstead dated May 24, 2003**. Claimant was assessed for complaints of diabetes, pain, and headaches with dizziness. (Tr. 200). She reported that she was working as a cook. She stated that she could dress and feed herself, stand for 5 to 10 minutes at a time or 10 to 15 minutes out of an eight-hour day, walk on level ground for less than half a block, sit

for 10 to 15 minutes, lift about 8 pounds, and drive about 10 minutes. She also said that she could do simple household chores like sweeping, cooking, doing the dishes, grocery shopping, and climbing stairs.

On examination, claimant was 64 inches tall and weighed 263 pounds. (Tr. 201). Her blood pressure was 156/73. Dr. Winstead observed that she was obese. She got on and off the exam table and up and out of the chair with slight difficulty.

Claimant had 2+ pulses in the wrists, and 1+ in the ankles. She had no cyanosis, clubbing, or edema of the lower extremities. She had full range of motion of the elbow, forearm, wrists, shoulders, and knees. Her pain symptoms revolved primarily around her shoulder, elbow and knee.

Sensory examination was intact. Claimant had no evidence of any cerebellar dysfunction. Cranial nerves were intact.

Dr. Winstead's impression was pain in the shoulder and knee, with full, painless range of motion of the joints, and diabetes, with some symptoms complex consistent with diabetic neuropathy. (Tr. 202). However, Dr. Winstead noted that it was a bit atypical as claimant had described pain starting in her hip and shooting down her leg. He noted that she was able to ambulate without assistive devices, and could perform fine and gross manipulative tasks.

As claimant had continued to work, Dr. Winstead was less concerned about her functional limitations. He found that she had no limitation as to her ability to sit, stand, walk, lift, hear, speak, or handle objects. However, he thought that she might have some issues with standing for extended periods of time.

Dr. Winstead stated that a chest radiograph revealed no acute cardiopulmonary process. The cardiac silhouette occupied approximately 65% of the thoracic cavity.

**(4) Psychological Evaluation by Dr. Alfred Buxton dated August 2, 2003**. On examination, claimant's verbal receptive and expressive language skills were good. (Tr. 218). Recent and remote memories were intact. Her ability to attend and concentrate was good. Pace was even. Intellect was subaverage.

Judgment and reflective cognition were good. Reasoning was fair, and insight was poor. Cognitions were simple and concrete, but logical. Mood was of mild dysphoria. Affect had brief, open tearfulness. Self-image was a bit poor. Goal orientation was fair.

Claimant was a chronic worrier. She was easily upset, then tended to cry. She had frequent unprovoked crying spells. She was alert, responsive, and oriented in all four spheres.

Dr. Buxton noted that claimant was functionally illiterate by self-report. (Tr. 219). He found that she was of subaverage general intellect, with commensurate

5

adaptive daily living skill development. She was regarded as being at least marginally competent as a manger of her own personal affairs.

Clinically, claimant presented with a major depressive disorder, recurrent, without psychotic features, with degree of impairment mild and prognosis guarded, and chronic pain, with degree of impairment mild to moderate and prognosis guarded. Dr. Buxton noted that continued outpatient mental health intervention, as well as medical monitoring and management of her physical conditions, would be appropriate.

Claimant's GAF score was 65 over the previous 12 months. Dr. Buxton observed that she was maintaining part-time gainful competitive employment, and had full-time employment until about a year prior. He found that from a psychological perspective, she would not be precluded from full-time employment.

**(5) Psychiatric Review Technique ("PRT") Form dated August 13, 2003**. Dr. R. H. Rolston assessed claimant for major depression. (Tr. 223). He determined that she was mildly restricted as to activities of daily living. (Tr. 233). He found that she was not restricted in any other area. Based on the medical evidence in the file, Dr. Rolston determined that claimant's allegation was non-severe. (Tr. 235).

**(6) Letter from JoAnn Ralston dated August 25, 2003**. Ms. Ralston, co-owner of Paul's Pirogue Restaurant, wrote that she had to terminate claimant's employment because claimant had to park in front of the restaurant because she was unable to walk one-quarter of a block; had complained of vertigo many times while working; had a fluctuation of blood sugar which caused weakness; had complained about the heat in the kitchen; suffered from edema in the lower extremities due to prolonged standing on cement; her co-workers complained that she was unable to perform her duties, and she suffered from multiple medical problems, including high blood pressure, obesity, and diabetes. (Tr. 239).

**(7) Records from UMC dated June 15, 2003 to June 6, 2004**. On June 15, 2003, claimant complained of chest pain, right arm and left leg pain, and chronic back pain. (Tr. 289, 292). An ECG was normal. (Tr. 288, 290). The assessment was chest pain, lower back pain, and hip pain. (Tr. 292).

On July 28, 2003, claimant complained of pain to the legs and back, weakness and dizziness, and chest pain while cleaning dishes. (Tr. 281). Her blood pressure was 136/72, and she weighed 260 pounds. An ECG was borderline. (Tr. 280). The assessment was hypertension, well-controlled, chest pain, and diabetes mellitus, not controlled. (Tr. 281).

On August 19, 2003, claimant complained of bilateral leg pain. (Tr. 267). The assessment was diabetic neuropathy.

On July 27, 2003, claimant's assessment was diabetes under fair glucose control, hypertension under control, and obesity. (Tr. 261). She was near her goal as to diabetes on November 4, 2003. (Tr. 259).

On March 8, 2004, claimant complained of constant head pressure and dizziness, fatigue, generalized body aches, and shortness of breath with exertion. (Tr. 257). Her hypertension was controlled on medications. (Tr. 258).

**(8) Records from Tyler Mental Health dated November 21, 2001 to June 14, 2004**. Claimant was treated for major depressive order, recurrent. (Tr. 299, 303, 313, 325). She was stable on medications. (Tr. 316, 322-23).

**(9) Claimant's Administrative Hearing Testimony**. At the hearing on July 21, 2004, claimant was represented by Catherine Williams, a non-attorney with Volunteers of America ("VOA"). Claimant testified that she had last worked as a restaurant cook the previous year. (Tr. 344). She reported that she had been fired because she could not fulfill her job requirements. She stated that she had applied for unemployment benefits, which had ended about six months prior. (Tr. 345).

Claimant testified that after her unemployment ended, she did not look for work because she was feeling bad. (Tr. 346). She reported that her daughter-in-law,

son, and sister were helping her out financially.

Regarding activities, claimant testified that she watched television most of the time. She stated that she was in bed a lot because of her leg and fatigue.

As to limitations, claimant reported that she could stand and walk for about 20 to 25 minutes. (Tr. 347). She stated that she had pain with sitting sometimes. She testified that she spent most of the day "[j]ust like up and down, up and down." (Tr. 348).

Claimant's daughter-in-law, Pricilla Carter, testified that claimant was hurting a lot and could not get around as she liked. (Tr. 348). She stated that claimant had to stop, and would moan with pain.

**(10) The ALJ's Findings**. Claimant argues that: (1) the ALJ erred in failing to properly develop the record with regard to claimant's illiteracy and her complaints, and (2) the ALJ's erred in determining the severity of all of her impairments, resulting in findings at Steps 3 through 4 of the evaluation process which were unsupported by the evidence. Because I find that the ALJ erred in finding that claimant could perform medium work, I recommend that this case be **REMANDED** for further proceedings.

As to the first argument, claimant asserts that she was "essentially unrepresented" at the hearing, because Ms. Williams of VOA is not an attorney. (rec.

doc. 10, p. 3). It is well established that the ALJ owes a duty to a claimant to develop the record fully and fairly to ensure that his decision is an informed decision based on sufficient facts. *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996). When a claimant is not represented by counsel, the ALJ owes a heightened duty to "scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts." *Id.*, citing *Kane v. Heckler*, 731 F.2d 1216, 1219 (5th Cir. 1984). However, to merit reversal of the ALJ's decision, a claimant who does not validly waive her right to counsel must prove that she was thereby prejudiced. *Id.*; *Gullett v. Chater*, 973 F.Supp. 614, 621 (E.D. Texas 1997).

In this case, while claimant did not have counsel, she was represented by Catherine Williams of VOA. Even if claimant had shown that the ALJ failed to properly develop the record, she must still show that she was prejudiced as a result of a scanty hearing. *Kane v. Heckler*, 731 F.2d 1216, 1219 (5th Cir. 1984); *Shave v. Apfel*, 238 F.3d 592, 597 (5th Cir. 2001). Prejudice can be established by showing that additional evidence would have been produced if the ALJ had fully developed the record, and that the additional evidence might have led to a different decision. *Newton v. Apfel,* 209 F.3d 448, 458 (5th Cir. 2000).

Here, claimant argues that "an attorney would have properly questioned Ms. Carter and obtained all necessary information concerning her numerous impairments,

the limitations resulting from same, the treatment/medications she received, and her work history. (rec. doc. 10, p. 5). However, she had not cited any specific evidence to support this assertion. Thus, this argument lacks merit.

The undersigned is persuaded, however, by claimant's argument that the evidence does not show that she could perform medium work. The ALJ found that claimant retained the residual functional capacity to occasionally lift and carry up to 50 pounds; to frequently lift and carry up to 25 pounds; to sit for up to 6 hours of an 8-hour workday; *to stand and walk for up to 6 hours of an 8-hour workday.* (emphasis added). (Tr. 19). However, the evidence does not support the finding that claimant could stand and walk for up to 6 hours a day.

The record reflects that claimant had diabetes which was not under good control. Although the Commissioner argues that the evidence shows that her diabetes was under control (rec. doc. 11, p. 6), the medical reports cited were referring to her hypertension, not diabetes. (Tr. 152 "htn – good control; DM – poor control"; Tr. 261 "DM Type II – Fair glu control; htn – control). In fact, the consultative examiner, Dr. Winstead, found that claimant "seems to have some symptoms complex consistent with diabetic neuropathy." (Tr. 202). The physicians at UMC also diagnosed claimant with peripheral neuropathy. (Tr. 129). Dr. Winstead further determined that claimant "may have some issues with standing for extended periods of time." (Tr.

202).

The ALJ noted that claimant had continued to work part-time despite her subjective complaints. (Tr. 18). However, claimant was terminated in part because she was "unable to walk one-quarter of a block" and had to park in the front of the restaurant, and had edema in her lower extremities "due to prolonged standing on cement." (Tr. 112). The records from UMC confirm that claimant had bilateral pedal edema. (Tr. 129, 134).

The Social Security Regulations define medium work as follows:

The regulations define medium work as lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. *A full range of medium work requires standing or walking, off and on, for a total of approximately 6 hours in an 8-hour workday in order to meet the requirements of frequent lifting or carrying objects weighing up to 25 pounds.* As in light work, sitting may occur intermittently during the remaining time. Use of the arms and hands is necessary to grasp, hold, and turn objects, as opposed to the finer activities in much sedentary work, which require precision use of the fingers as well as use of the hands and arms.

The considerable lifting required for the full range of medium work usually requires frequent bending-stooping (Stooping is a type of bending in which a person bends his or her body downward and forward by bending the spine at the waist.) Flexibility of the knees as well as the torso is important for this activity. (Crouching is bending both the legs and spine in order to bend the body downward and forward.) However, there are a relatively few occupations in the national economy which require exertion in terms of weights that must be lifted at times (or involve equivalent exertion in pushing or pulling), but are performed primarily in a sitting position, e.g., taxi driver, bus driver, and tank-truck driver (semiskilled jobs). *In most medium jobs, being on one's feet for*

> *most of the workday is critical.* Being able to do frequent lifting or carrying of objects weighing up to 25 pounds is often more critical than being able to lift up to 50 pounds at a time.

(emphasis added). SSR 83-10,1983 WL 31251, *6.

The ALJ found that claimant could perform the requirements of medium work. However, the medical records do not support the finding that she could stand for most of the workday such as to be able to perform medium work. Accordingly, the undersigned recommends that this case be remanded for an RFC determination which includes all of the limitations supported by the medical evidence.

Accordingly, the undersigned recommends that this case be **REMANDED** to the Commissioner for further administrative action pursuant to the fourth sentence of 42 U.S.C. § 405(g). This includes, but does not limit, sending the case to the hearing level with instructions to the Administrative Law Judge to obtain a residual functional capacity assessment which includes all of the limitations supported by the medical evidence. Claimant shall be afforded the opportunity to submit additional evidence and to testify at a supplemental hearing.

Inasmuch as the remand recommended herein falls under sentence four of Section 405(g), any judgment entered in connection herewith will be a "final judgment" for purposes of the Equal Access to Justice Act (EAJA). See, *Richard v. Sullivan*, 955 F.2d 354 (5th Cir. 1992) and *Shalala v. Schaefer*, 509 U.S. 292 (1993).

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and F.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within ten (10) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FACTUAL FINDINGS AND/OR THE PROPOSED LEGAL CONCLUSIONS REFLECTED IN THIS REPORT AND RECOMMENDATION WITHIN TEN (10) DAYS FOLLOWING THE DATE OF ITS SERVICE, OR WITHIN THE TIME FRAME AUTHORIZED BY FED.R.CIV.P. 6(b), SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING THE FACTUAL FINDINGS OR THE LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT, EXCEPT UPON GROUNDS OF PLAIN ERROR.** *DOUGLASS V. UNITED SERVICES AUTOMOBILE ASSOCIATION*, **79 F.3D 1415 (5TH CIR. 1996).**

Signed this ___ day of _____, 200_ at Lafayette, Louisiana.

_____
C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE